UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANNA E. SNYDER OLSON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Jane M. Beckering

Case No. 1:23-cv-724

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff was not disabled within the meaning of the Act. Plaintiff, proceeding pro se, seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on September 30, 2019, alleging that she had been disabled since July 15, 2009, due to lupus, fibromyalgia, Sjogren's disease, idiopathic hypersomnia, and migraines. (PageID.427, 502–05.) Plaintiff was 38 years old at her alleged onset date and 48 years old at the time she filed her application. (PageID.427.) Plaintiff had completed

two years of college and had past relevant work as an assistant hotel manager. (PageID.388, 530–31.) After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On October 14, 2021, ALJ Cynthia S. Harmon held a hearing by telephone during which Plaintiff and Susan Rowe, an impartial vocational expert (VE), testified. (PageID.396–425.)

On March 9, 2022, ALJ Harmon issued a written decision denying Plaintiff's application. (PageID.381–390.) The Appeals Council denied Plaintiff's request for review on May 3, 2023. (PageID.15–18.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on July 5, 2023.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. § 404.1545.

Plaintiff bears the burden of establishing the right to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2013, and had not engaged in substantial gainful activity since her alleged onset date of July 15, 2009, through her date last insured. (PageID.383–84.) At step two, the ALJ found that Plaintiff suffered from severe impairments of: (1) fibromyalgia; (2) idiopathic hypersomnia and hypersomnolence; (3) major depressive disorder; and (4) obesity. (PageID.384.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Regarding Plaintiff's fibromyalgia and obesity, the ALJ noted that she evaluated these impairments at multiple steps of the sequential

evaluation process pursuant to Social Security Rulings 12-2p and 19-2p. The ALJ also found that no medical source designated to make equivalency findings had concluded that these impairments medically equaled a listed impairment. (PageID.384.) Regarding Plaintiff's mental impairment, the ALJ considered listing 12.04. Applying the "paragraph B" criteria of listing 12.04, the ALJ found that Plaintiff had mild limitations in the areas of understanding, remembering, or applying information and adapting or managing oneself and moderate limitations in the areas of interacting with others and concentrating, persisting, and maintaining pace. (PageID.384–85.)

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except:

> [She] is limited to simple, routine tasks not involving complex decision making or judgment; occasional workplace changes; no production rate pace or quota requirements such as required with assembly line work; occasional contact with coworkers, supervisors, and the general public.

(PageID.385–86.)

The ALJ found that Plaintiff could not perform her past relevant work (PageID.388), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of laundry sorter, light cleaner, and cafeteria attendant, approximately 335,000 of which existed in the national economy. (PageID.389.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus concluded that Plaintiff had not been disabled from her alleged onset date through her date last insured of December 31, 2013.

## **DISCUSSION**

Plaintiff raises four issues in her appeal: (1) the ALJ erred by failing to recognize Plaintiff's lupus diagnosis and symptoms as a medically determinable impairment in violation of Social Security's own rules in 20 C.F.R. Part 404, Subpart P, Appendix 1, section 14.00D1b; (2) the ALJ erred by failing to recognize Plaintiff's fibromyalgia diagnosis and symptoms as a medical condition equal in severity to one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, in violation of Social Security Ruling 12-2p; (3) the ALJ erred by failing to recognize the combination of Plaintiff's medically determinable impairments as meeting the severity of one of the listed impairments in 29 C.F.R. Part 404, Subpart P, Appendix 1; and (4) the ALJ erred by "cherry-picking" some of the VE's testimony, rather than taking it into account in its entirety. (ECF No. 9 at PageID.1570.)

**I.      Finding that Lupus Was Not a Medically Determinable Impairment**

Plaintiff contends that the ALJ erred in her step-two finding that lupus was not a medically determinable impairment. The ALJ found that lupus was "not supported by laboratory testing, as lab workup was noted to be negative for [l]upus." (PageID.384 (citing PageID.912).)

The claimant bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). Pursuant to the agency's regulation, a claimant's impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The claimant must provide "objective evidence from an acceptable medical source." *Id.*; *see also* 20 C.F.R. Part 404, Subpart P, App'x 1, § 14.00B (stating that in addition to other evidence, laboratory reports are required to establish immune system disorders). The claimant's "statement of symptoms, a diagnosis, or a

6

medical opinion," do not suffice. *Id.*; *see Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96-4p, 1996 WL 374187, at *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence.").

According to the Mayo Clinic, diagnosing lupus is difficult because symptoms vary considerably among individuals and no single test can diagnose lupus. Instead, doctors must consider "[t]he combination of blood and urine tests, signs and symptoms, and physical examination findings" in reaching a diagnosis. *See* https://www.mayoclinic.org/diseases-conditions/lupus/diagnosis-treatment/drc-20365790. The medical evidence in the record regarding the existence of lupus during the relevant period, including laboratory testing, was, at best, inconclusive. For example, in September 2011, Rebecca Schreiner, M.D., cited Plaintiff's history of lupus but noted that recent ANA[2] and double-stranded DNA[3] blood tests were all normal, suggesting that her lupus was in remission and most of her pain complaints likely related to fibromyalgia. (PageID.649.) Testing in April 2012 was also negative. (PageID.787 (noting that

---

[2] Anti-nuclear antibodies (ANA) are a potential marker of autoimmune disease, such as lupus. ANA is a widely-used initial test for diagnosing autoimmune disease, but is not conclusive. Because more than 95% of people with lupus will test positive for ANA, a negative test may help to exclude a lupus diagnosis. However, only about 11-13% of people with a positive ANA test have lupus, and up to 15% of completely healthy people will have a positive ANA test, so ANA tests do not confirm diagnosis of autoimmune or connective tissue disease. *See* https://rheumatology.org/patients/antinuclear-antibodies-ana.

[3] Anti-double stranded DNA antibodies are highly specific markers of systemic lupus. Raised levels are found in 50-70% of patients with active, particularly untreated, systemic lupus. *See* https://www.southtees.nhs.uk/services/pathology/tests/dna-antibody-anti-double-stranded-dna/.

dRVVT (diluted Russell's viper venom time)[4] provided no evidence of a lupus anticoagulant); PageID.803–04 (negative for lupus anticoagulant); PageID.912 (lupus anticoagulant hexagonal phase negative)). In September 2012, Suzane E. Vandenbrink-Webb, M.D., observed that Plaintiff's history of lupus was "questionable." (PageID.882.)

The medical evidence generated after Plaintiff's date last insured was consistent with the in-period evidence. For example, double stranded DNA tests performed in December 2015 and November 2019 were negative. (PageID.1190, 1264.) In April 2017, Rheumatologist Philip Velderman, M.D., noted that Plaintiff's ANA labs had been normal "for many years," suggesting that she did not have active lupus. (PageID.1086.) Finally, in October 2021, Rheumatologist Fadi Ajine, M.D., reported that laboratory tests conducted that month did not reveal evidence of active lupus. (PageID.1561.)

Plaintiff contends that the record contained evidence from which the ALJ could have found lupus to be a medically determinable impairment, including positive/abnormal ANA results in December 2008 and April 2017. (PageID.215, 220, 1171.) As for the April 2017 positive ANA result, this test was conducted more than three years after Plaintiff's date last insured, and indicated that further testing was warranted. (PageID.1171.) Moreover, the same month, Dr. Velderman noted that Plaintiff's ANA labs had been normal for many years. (PageID.1086.)

Regarding the positive ANA test from December 2008—seven months prior to the alleged onset date—an issue arises whether the Court may consider it. According to the Commissioner, the Court may not do so because Plaintiff submitted this evidence for the first time to the Appeals

---

[4] Diluted Russell's viper venom time has become the most popular test to detect lupus anticoagulant and is more sensitive than other global tests used to detect lupus anticoagulant. *See* https://pubmed.ncbi.nlm.nih.gov/28804828/.

Council on August 30, 2023, well after the ALJ's March 9, 2022 decision. (ECF No. 10 at PageID.1588 (citing PageID.15–19, 33–377).)

The Commissioner further argues that Plaintiff cannot satisfy her burden for a sentence six remand under 42 U.S.C. § 405(g). (*Id.*) *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (to support a remand under sentence six, a plaintiff must show that the evidence is both new and material and that the plaintiff had good cause for not presenting it to the ALJ). Plaintiff responds that she did, in fact, submit the evidence to the ALJ on a CD prior to the hearing. (ECF No. 11 at PageID.1598 (citing PageID.460–61).) Regardless, assuming that Plaintiff had properly submitted the 2008 positive ANA test, it would not have resulted in a different outcome. The ALJ's finding that lupus was not a medically determinable impairment was well supported not only by the April 2012 negative ANA test, but also by the other evidence mentioned above casting doubt on a diagnosis of lupus during the relevant period. The December 2008 positive test would not have altered this outcome because it was generated seven months before Plaintiff's alleged onset date and, more importantly, as set forth in footnote 3, *supra*, a positive ANA test is not conclusive of lupus because it is only an initial starting point. Thus, any error is harmless. *See Alvarez ex rel. J.A. v. Astrue*, No. 1:09-CV-839, 2010 WL 3370396, at *4 (N.D. Ohio Aug. 25, 2010) ("Even when an ALJ fails to develop the record . . . courts need not remand if the error was harmless-that is, if substantial evidence already in the record supports the ALJ's decision.").

Citing the Arthritis Foundation's *Primer on the Rheumatic Diseases* referenced in 20 C.F.R., Subpart P, Appendix 1 under listing 14.00D.1.b. for autoimmune disorders, Plaintiff notes that lupus may be diagnosed based on the presence over time of any four or more of 11 criteria set forth in the primer. (ECF No. 9 at PageID.1573; ECF No. 9-1.) Plaintiff further argues the ALJ erred by failing to consider her medical records evincing her diagnoses and symptoms over time

9

satisfying at least four of the 11 criteria listed in the Primer. (ECF No. 9 at PageID.1574.) This argument lacks merit because Plaintiff fails to point to a lupus diagnosis based these criteria by an acceptable medical source during the period at issue. To the contrary, the medical evidence shows that, during the relevant period, medical sources found her previous diagnosis "questionable" and that her symptoms were unrelated to lupus.

Finally, even if the ALJ erred in finding lupus not a medically determinable impairment, any error was harmless because the ALJ found that Plaintiff had severe impairments at step two and proceeded to the other steps in the sequential analysis. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009) ("[T]he ALJ's failure to rate the B criteria at step two of the five-step analysis was clearly harmless. Notwithstanding this error, the ALJ ultimately concluded that Rabbers had a severe mental impairment and proceeded to step three, which was all Rabbers could have asked for."). Plaintiff fails to show that she had limitations relating to lupus that the ALJ did not consider in her review of Plaintiff's symptoms from her other severe impairments, including fibromyalgia. *See Buchanan v. Comm'r of Soc. Sec.*, No. 1:18-cv-466, 2019 WL 2710118, at *6 (S.D. Ohio June 28, 2019), *report and recommendation adopted*, 2019 WL 4220898 (S.D. Ohio Sept. 5, 2019).

This claim of error thus lacks merit.

**II.    ALJ's Step Three Finding**

Plaintiff contends that the ALJ erred in her step-three finding in two respects. First, she contends that the ALJ should have found that her fibromyalgia diagnosis and symptoms equaled a listing. Second, she contends that the ALJ erred in failing to find that the combination of her impairments medically equaled listing 14.02B.

The claimant bears the burden of demonstrating that she meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). To satisfy

this burden, the claimant must show she meets all of the criteria for that listing. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *see Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (to demonstrate medical equivalence, "the claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment"). An impairment that meets only some of the requirements of a listing does not qualify despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To begin, apart from raising the argument in her statement of errors, Plaintiff fails to elaborate on her claim that her fibromyalgia equaled a listing. Plaintiff does not identify what listing she believes her symptoms equaled, nor does she cite any particular evidence supporting this argument. Accordingly, Plaintiff has waived this argument.[5] *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012) (issues raised in a perfunctory manner are deemed waived); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and quotation omitted).

Turning to Plaintiff's argument regarding listing 14.02B, Plaintiff must show:

B. Repeated manifestations of [systemic lupus erythematosus], with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

---

[5] In her reply, Plaintiff argues that the ALJ erred by basing her fibromyalgia diagnosis on ANA test results. (ECF No. 11 at PageID.1600–01.) This argument lacks merit because the ALJ found fibromyalgia a severe impairment at step two. While the ALJ did refer to a positive ANA test in her RFC discussion, the ALJ gave Plaintiff "the benefit of any doubt" in providing a limitation to accommodate Plaintiff's fibromyalgia symptoms, even though evidence showed that Plaintiff's symptoms were stable. (PageID.387.)

11

> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.02.

Plaintiff fails to meet her burden of proving equivalence. First, in support of her argument, Plaintiff cites her hearing testimony, as well as her own narrative of her medical history. (ECF No. 9 at PageID.1574 (citing PageID.403, 409–10, 1402).) However, Plaintiff's allegations of pain or symptoms cannot substitute for a missing or deficient sign or laboratory finding, such as objective medical evidence, to raise the severity of an impairment to that of a listed impairment. 20 C.F.R. § 404.1529(d)(3). Second, while Plaintiff cites some medical records from the relevant period that *might* document the two required two constitutional symptoms or signs (*id.* at PageID.1572), she fails to cite medical records documenting marked limitation in activities of daily living, maintaining social functioning, and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. As set forth above, in her "paragraph B" findings, the ALJ found that Plaintiff had only mild and moderate limitations in these areas. (PageID.384–85.) Finally, the evidence Plaintiff cites does not include an opinion from an acceptable medical source that, during the period at issue, Plaintiff's impairments, individually or in combination, medically equaled listing 4.02B. *See Dejaegher v. Comm'r of Soc. Sec.*, No. 1:15-CV-1093, 2017 WL 1017818, at *6 (W.D. Mich. Mar. 16, 2017).

Thus, this claim of error lacks merit.

### III.  VE's Testimony

Last, Plaintiff contends that the ALJ erred by "cherry picking" the VE's testimony, specifically, by not crediting her testimony that Plaintiff would likely lose her job if her fatigue/hypersomnolence resulted in more than two or three absences or episodes of tardiness at work each month. This argument fails because an ALJ is not bound to accept a VE's testimony

pertaining to limitations the ALJ found unsupported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Here, although the ALJ posed questions to the VE based on Plaintiff's testimony, the ALJ ultimately found that Plaintiff's impairments would not cause her to be absent or late to work more than two or three times per month. (PageID.388.) Thus, the ALJ was not required to accept the VE's testimony on this issue.

## CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: February 9, 2024                                      /s/ Sally J. Berens
                                                                              SALLY J. BERENS
                                                                              U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).